# IN THE SUPREME COURT OF IOWA

No. 84 / 04-1176

Filed February 16, 2007

**ROBERT BREMER**,

Appellee,

vs.

**JERRY WALLACE** and **IOWA GREAT LAKES LIFTS**,

Appellants.

_____

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Dickinson County, David A. Lester, Judge.


Defendants seek further review of court of appeals decision affirming district court judgment awarding plaintiff compensatory and punitive damages for defendants' failure to pay award of workers' compensation benefits. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**


Michael H. Johnson of Stoller & Johnson, Spirit Lake, for appellants.


Pete Leehey and Kent Smith of Pete Leehey Law Firm, P.C., Cedar Rapids, for appellee.

**TERNUS, Chief Justice.**

Appellants, Jerry Wallace and Iowa Great Lakes Lifts, have appealed a district court judgment awarding compensatory and punitive damages to appellee, Robert Bremer, based on the defendants' failure to pay an award of workers' compensation benefits. A divided court of appeals affirmed the judgment, and this court granted further review. Upon consideration of the arguments of the parties and the governing legal principles, we vacate the court of appeals decision, reverse the district court judgment, and remand for entry of judgment in favor of the defendants.

I. *Background Facts and Proceedings.*

While working for Jerry Wallace, d/b/a Iowa Great Lakes Lifts, Robert Bremer sustained a work-related injury. Wallace did not carry workers' compensation insurance, had not met the statutory requirements for self-insured status, and had not complied with the procedures to be relieved of the obligation to carry workers' compensation insurance.[1] *See generally* Iowa Code §§ 87.1, .4, .11 (2001). Because Wallace was uninsured, Bremer had the option of suing Wallace in "an action at law for damages" or collecting workers' compensation benefits. *See id.* § 87.21. Bremer chose to pursue a claim under the workers' compensation statute. He was

---

[1]As we did in *Reedy v. White Consolidated Industries, Inc.*, 503 N.W.2d 601 (Iowa 1993), we use the term "self-insured" to refer to an employer who has complied with section 87.4, which allows an employer to meet the liability insurance requirement of Iowa Code section 87.1 by participating in a "self-insured program." Iowa Code § 87.4 (2001) (cited in *Reedy*, 503 N.W.2d at 603). Some confusion in the use of this term may arise from the same or similar appellation being used in reference to an employer who has been granted relief from the requirement of carrying workers' compensation insurance as authorized by section 87.11. *See, e.g.*, Iowa Code § 87.11 para. 4 (referring to employer relieved from insurance requirement as a "self-insured employer"); Iowa Admin. Code r. 191—57.2(4) (administrative rule of the insurance commissioner defining a "self-*insurer*" as an employer relieved from carrying workers' compensation insurance (emphasis added)). In contrast, rules of the workers' compensation commissioner refer to such employers as "employers relieved from insurance pursuant to Iowa Code section 87.11." Iowa Admin. Code r. 876—2.3; *accord id.* r. 876—4.48(3); *id.* r. 876—10.3(2); *id.* r. 876—11.2.

successful and obtained an award of healing period benefits and permanent partial disability benefits.

Thereafter, Wallace paid no benefits as required by the commissioner's arbitration award, so Bremer brought this suit claiming damages as a result of his employer's failure "to pay workers' compensation benefits as ordered by the Iowa workers' compensation commissioner." Bremer also sought punitive damages based on Wallace's reckless disregard in unreasonably refusing to pay the benefits awarded. Bremer ultimately obtained a judgment against Wallace and Iowa Great Lakes Lifts for compensatory and punitive damages. On the employer's appeal, the court of appeals affirmed the district court's judgment. We granted further review.

The parties agree one issue is presented: Does Iowa recognize a common-law claim for bad-faith refusal to pay workers' compensation benefits by an uninsured employer? We review this legal question for correction of errors of law. *See Wiedmeyer v. Equitable Life Assurance Soc'y*, 644 N.W.2d 31, 33 (Iowa 2002).

II. *Discussion.*

Although the question presented in this appeal is a matter of first impression, the plaintiff relies on two prior decisions of this court to support his claim against the defendants: *Boylan v. American Motorists Insurance Co.*, 489 N.W.2d 742 (Iowa 1992), and *Reedy v. White Consolidated Industries, Inc.*, 503 N.W.2d 601 (Iowa 1993). In *Boylan*, we held an injured worker could sue the employer's workers' compensation insurer for a bad-faith failure to pay or for a bad-faith delay in paying workers' compensation benefits. 489 N.W.2d at 744. We rejected the argument that the statutory penalty for unreasonably delayed or terminated workers' compensation benefits was the employee's exclusive remedy. *Id.* (citing Iowa Code

§ 86.13). In *Reedy,* we said a *self-insured* employer could also be held liable for a bad-faith failure to pay a workers' compensation claim. 503 N.W.2d at 603 (citing Iowa Code § 87.4).

In this case, the plaintiff asks us to extend *Boylan* even further by imposing bad-faith liability on an *uninsured* employer. For reasons we now discuss, we decline to do so.

This court first recognized an insurer's tort liability for bad-faith conduct relating to a claim made by its own insured in *Dolan v. Aid Insurance Co.*, 431 N.W.2d 790 (Iowa 1988). Our decision to impose liability was based on two considerations: (1) our belief that "traditional damages for breach of contract will not always adequately compensate an insured for an insurer's bad faith conduct"; and (2) the fact that "insurance policies are contracts of adhesion . . . due to the inherently unequal bargaining power between the insurer and insured." *Dolan,* 431 N.W.2d at 794. As we noted in *Boylan,* the "recognition of tort liability on the part of workers' compensation *insurance carriers* guilty of the type of bad-faith conduct for which tort liability was recognized in *Dolan* [was] a logical extension of that decision." *Boylan,* 489 N.W.2d at 744 (emphasis added). We explained our application of tort liability to *self-insured* employers in *Reedy* as follows: "For purposes of a bad-faith tort claim, we see no distinction between a workers' compensation insurance carrier for an employer and an employer who voluntarily assumes self-insured status under the [workers' compensation] act." *Reedy,* 503 N.W.2d at 603 (citing Iowa Code § 87.4).

The common thread in these decisions is the defendant's status as an insurer, or in the case of a self-insured employer, the substantial equivalent of an insurer. This status reflects and is consistent with the rationale underlying our decision in *Dolan.*

The plaintiff here argues there is no reason to differentiate between the self-insured employer in *Reedy* and the uninsured employer in this case. We do not agree, however, that an uninsured employer is equivalent to an insurer or a self-insured employer. *See id.* ("A self-insured employer under the Workers' Compensation Act is not an employer who fails to secure insurance against workers' compensation liability."). The dissimilarity of the uninsured employer to the defendants in *Boylan* and *Reedy* is perhaps best illustrated by examining what is required for self-insured status.

A self-insured employer must meet precise requirements to acquire that standing. Under section 87.4, "groups of employers by themselves or in an association with any or all of their workers, may form insurance associations," as provided in that statute "[f]or the purpose of complying with [chapter 87]." Iowa Code § 87.4. These "self-insurance associations" must submit a plan to the insurance commissioner for approval. *Id.* Approval is conditioned on meeting rigorous financial requirements. *See* Iowa Admin. Code r. 191—56.3. Once a certificate of approval has been issued by the insurance commissioner, "the workers' compensation self-insurance association" is authorized "to provide workers' compensation benefits." *Id.* r. 191—56.8(1). Thereafter, the association is subject to the continuing supervision of the insurance commissioner. *Id.* rs. 191—56.9, 191—56.13.

As this regulatory scheme shows, self-insured employers are not simply employers who declare they will be responsible for paying workers' compensation benefits owed to their employees. Self-insured employers are members of a highly regulated formal insurance association that is responsible for paying workers' compensation benefits owed to employees of association members. When the true nature of self-insured status is

examined, it is apparent why this court held in *Reedy* that there was "no distinction between a workers' compensation insurance carrier for an employer and an employer who voluntarily assumes self-insured status." 503 N.W.2d at 603.

The defendant in this case stands in a much different position. He did not purchase workers' compensation insurance or join a self-insurance association. Thus, he is not an insurer, nor is he the substantial equivalent of an insurer. Consequently, the actual issue in this case is whether bad-faith tort liability for failing to pay workers' compensation benefits should be imposed under circumstances that do not involve an insurer/insured relationship.

In concluding such liability should not be imposed, we begin with an examination of the reasons underlying our imposition of tort liability for bad-faith conduct in *Dolan*. One of those reasons—the adhesive nature of the insurance contract—is obviously not present here. We are also not persuaded that the second basis for imposing tort liability—the inadequacy of other remedies—is a sufficient reason to extend the tort of bad faith outside the traditional insurer/insured relationship. The plaintiff in this case is in no different position than any other plaintiff who has an unsatisfied judgment against a person legally liable for the plaintiff's injuries. Although Bremer has apparently not obtained a court judgment against the defendant for the benefits awarded by the workers' compensation commissioner, that remedy is available to him. *See* Iowa Code § 86.42. Moreover, as noted above, the plaintiff initially had the option of foregoing workers' compensation benefits altogether and suing his employer in a civil action for damages. *See id.* § 87.21. In either situation, the plaintiff had the same opportunities for enforcement of the judgment that are available to any other successful plaintiff. To find these remedies

inadequate would mean any defendant who in bad faith fails to promptly pay a judgment would arguably be subject to liability for damages flowing from this failure. We have found no authority for extending bad-faith liability on this ground.

III. *Conclusion.*

An uninsured employer is not subject to bad-faith tort liability for failing to pay workers' compensation benefits awarded to an employee. We vacate the court of appeals' contrary decision and reverse the district court's judgment awarding damages under this theory of liability. This case is remanded for entry of an order of dismissal.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Hecht and Appel, JJ., who take no part.